UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHANNA STIRGUS** | **DOCKET NO. 23-cv-779** |
| **VERSUS** | **JUDGE: SHELLY D. DICK** |
| **PARISH HOSPITAL DISTRICT FOR THE PARISH OF WEST FELICIANA, ET AL.** | **MAGISTRATE: SCOTT D. JOHNSON** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### SUPPLEMENTAL, AMENDING, AND RESTATED COMPLAINT

The Complaint of Shanna Stirgus, a resident of the full age of majority of East Feliciana Parish, Louisiana, as supplemented, amended, and restated, as reflected in **bold** print, respectfully represents:

1.

Made defendant herein is Parish Hospital District for the parish of West Feliciana, West Feliciana Parish Hospital district No.1 d/b/a St. Francis Cypress Rural health Clinic (hereinafter "Clinic"), and the Board of Commissioners of the Hospital Service District for West Feliciana Paris (hereinafter "Board"), which exercises "absolute control and authority" over defendant Clinic and as set forth pursuant to law and Ordinance 189, both domiciled in the Parish of West Feliciana parish, Louisiana, and which are jointly indebted unto Petitioner for all sums as are reasonable under the premises, attorney fees, all costs of these proceedings, legal interest thereon from the date of judicial demand until paid, and all such other relief to which Petitioner is entitled at law or in equity.

2.

On February 10, 2020, Petitioner, an LPN, was hired to work for the defendants at the St. Francis Cypress Rural Health Clinic. Petitioner submits defendant Board, by Ordinance, controls

and manages the Parish Hospital District of which West Feliciana Parish Hospital, including St. Francis Cypress Rural Health Clinic is a part.

3.

At all times pertinent hereto, Petitioner was an "employee" of defendants, who are her joint employers, and defendants were Petitioner's "employer" within the meaning and intent of Louisiana law **and Federal law**.  Petitioner is African American.

4.

Following her hire, Petitioner was supervised by James Johnston, Clinic Manager, and Human Resources Manager, Tara McLin then Mary Carter, and Cy McCord, the practice manager.

5.

In 2019, Petitioner was diagnosed with breast cancer and, as a result, on October 18, 2021, requested intermittent FMLA in order to accommodate her ensuing cancer treatment.  Cancer is a "serious health condition" within the meaning and intent of the FMLA.

6.

Petitioner shows she was "disabled" within the meaning and intent of Louisiana law **and Federal law** in that she suffers from an actual impairment which substantially limits the major life activities of living, walking, working, moving, eating, has a record of such an impairment, and was regarded by defendants as "disabled."

7.

Following her diagnosis with breast cancer, Petitioner requested the ability to work remotely and was denied.  Yet, a white, non-disabled female, Jamie Coley, was allowed to work remotely.  Petitioner protested to Johnston and Carter that the denial of accommodation to work

from home and disparate treatment on account of race was discriminatory. Johnston verbally informed Petitioner, "you know Lee won't go for that with you".

8.

Throughout her employment with defendants, Johnston repeatedly referred to Petitioner by race, including making frequent comments about Petitioner's hair braids and, in reference to her African American co-worker, "y'all look alike" and that he could not tell one black female apart from another. On several other occasions, Johnston referred to Petitioner's hair as "nappy" and Petitioner was subjected to numerous racially-derogatory comments in her workplace said out in the open and in front of Johnston, including referring to a black person as "big fat black", rejecting a black person's application because "she's black and can't spell", there are "too many of you all" [referring to black persons], employing a code word "Seymour" referring to a combative patient thereby summoning white employees to help, but when Petitioner and her black female co-worker were confronted with combative patients, there were denied assistance because they are black, "I don't care for your color", referring to black patients as "wild running monkey" on at least a monthly basis. Petitioner witnessed defendants, through Johnston, treat white employees, including Coley and Donovan Smith, both part of nursing staff, far better than Petitioner and her black female co-worker, including excluding Petitioner and her black female co-worker from meetings, while the white employees were permitted to leave the premises during breaks and not required to clock out, affording the white employees extended "smoke" breaks outside.

9.

The discriminatory treatment of Petitioner and her black female co-worker was also perpetrated on black patients of the Clinic by the white Clinic employees. On one occasion, a black patient, who was suspected as having COVID, was placed in an isolation room and the white

3

staff refused to treat her. The black patient having had urinated on herself as she was incapable of ambulating on her own to the bathroom and had been confined by the white employees to the isolation room. The black patient was in extreme respiratory distress and ignored by the white staff, except that one white staff nurse, cracked open the door and tossed in a maxi pad with it landing on the floor. When discovered, Petitioner and her black female co-worker donned PPE, entered the room, and assisted the patient to be cleaned and assessed. Petitioner and her black co-worker informed the doctor of the patient's dire condition, who then instructed Petitioner and her black co-worker to wheel her across the street to the Emergency Room.

10.

In contrast during the same time, a white patient who was known to be positive for COVID presented at the Clinic with similar symptoms to the black patient. She was immediately triaged by the white staff, immediately seen by the doctor, and transported, by ambulance, to Lane Regional Medical Center.

11.

Petitioner reported the discriminatory treatment of black patients and of herself to Johnston, the Clinic doctor, and HR, to no avail.

12.

While Petitioner was battling her cancer and denied ability to work remotely, she became extremely ill and in July, 2022, requested from defendants the ability to participate in a leave accrual program whereby other employees could "donate" leave time to her and she would not be out of leave or uncompensated. Petitioner's black co-worker offered to do so to assist Petitioner during her battle with cancer.

4

13.

In addition, on July 7, 2022, defendants, through HR, approached Petitioner and falsely advised her that her original FMLA form had "expired" and she therefore needed to submit another. On July 15, 2022, Petitioner submitted a "new" FMLA form to Johnston and HR.

14.

However, following Petitioner's requests for accommodation, request to be able to use donated leave time, and the July 7, 2022, HR request for an FMLA form (again), Petitioner was ostracized by defendants.

15.

Petitioner was denied leave, was denied the ability to work a flexible schedule to accommodate her cancer treatments, often being asked to reschedule appointments due to white co-workers requests, denied the ability to keep snacks at my desk throughout the day while battling nausea from the cancer treatment drugs, Nevertheless, white coworkers were allowed to have snacks at their desk. Yet, non-disabled white employees were allowed to engage in this conduct, without penalty of any kind. White co-workers would go into Jimmy's office without appointments or prior requests. Jimmy would close his door from his sick complaints and request we inform him when Cy McCord or Lee Chastan entered the building.

16.

On August 11, 2022, Petitioner when to HR to meet with Ms. Carter regarding race-based, disability-based discrimination in the workplace and FMLA retaliation she was experiencing. At that time, Carter informed Petitioner she had used all of her FMLA benefits and, further, that she would not be permitted to use any "donated" leave, although white employees had been permitted to use "donated" leave previously. They kept deferring the co-worker who asked to donate time.

17.

On August 19, 2022, Petitioner was terminated by defendants. During the termination, defendants falsely accused Petitioner of "stealing time" and when Petitioner requested details, defendants refused to provide details. Petitioner offered to defendants she has records of her absences and working time and offered to provide same to defendants, but defendants refused.

18

Petitioner contends she was terminated on account of her disability, her race, her reports and opposition to unlawful race-based and disability-based discrimination, and because she requested FMLA.

19.

Petitioner contends she was discriminated against on account of her race in violation of Federal and Louisiana law as she was subjected to a racially-hostile working environment, was treated less favorably than similarly situated whites, and was terminated.

20.

Petitioner contends she was discriminated against on account of her disability with cancer in violation of Louisiana law **and Federal law** as she was denied accommodations, denied ability to use "donated leave" time, was treated less favorably than similarly situated non-disabled persons, and was terminated.

21.

Petitioner contends she was retaliated against for requesting and taking FMLA in violation of the Family Medical Leave Act.

22.

Petitioner contends she was subjected to unlawful reprisal in violation of La. R.S. 23:967 on account of her repeated reports to HR and her supervision of unlawful, racially disparate

treatment of black patients and because Petitioner reported, opposed, and complained about unlawful race discrimination and disability discrimination, both in violation of La. R.S. 23:301, *et seq*. **Petitioner contends she was subjected to unlawful retaliation in violation of the ADA on account of her requests for accommodation, her disability, and because she protested, opposed, and complained about unlawful disability-based discrimination. Petitioner contends she was subjected to unlawful retaliation in violation of Title VII on account of her reports, oppositions, and complaints about what she reasonably believed to be unlawful race discrimination/harassment and unlawful race discrimination/harassment.**

23.

As a result of the situation sued upon herein, Petitioner sustained compensatory damages which include personal physical injuries, severe and extreme emotional distress and mental anguish, humiliation and embarrassment, past and future lost wages and benefits, interference with her ability to recover from cancer, lost employment opportunities, and loss of earning capacity.

24.

Petitioner shows defendant failed to have in full force and effect effective policies regarding race-based and disability-based discrimination, anti-retaliation/reprisal, FMLA and FMLA retaliation. Defendants took no steps to remedy the situation in Petitioner's working environment despite Petitioner's numerous reports, complaints, and oppositions to the unlawful conduct.

25.

Petitioner timely filed Charges of Discrimination with the EEOC and LCHR, **and received the attached Notice of Right to Sue, dated November 7, 2023**. Petitioner shows defendants were served with notice of her Charge of Discrimination and invited to participate in conciliation

before the filing of this lawsuit, which defendants refused.  All conditions precedent to suit herein under La. R.S. 23:301, *et seq.*, and Federal Law, have been met and/or complied with.

26.

Petitioner is entitled to and desires award of attorney's fees pursuant to Louisiana law and the FMLA.

27.

Petitioner shows defendants' conduct in retaliating against her for taking and requesting FMLA was willful on the part of defendants and defendants are therefore liable for liquidated damages.

28.

On March 14, 2023, Petitioner timely filed Charges of Discrimination with the EEOC and LCHR.  **Petitioner was issued the attached Notice of Right to Sue dated November 7, 2023.  All conditions perquisite to filing suit for violations of the ADA and Title VII have been complied with.**

29..

Petitioner is entitled to and desires an award of attorney fees pursuant to **Tile VII, 42 U.S.C. 2000e,** *et seq.*, **the ADA,** La. R.S. 23:303 and La. R.S. 23:967.

30.

Petitioner is entitled to and desires award of all such other relief to which she is entitled at law or in equity.

31.

Petitioner is entitled to and desires trial by jury of this matter.

WHEREFORE Petitioner, Shanna Stirgus, prays for trial by jury and after due proceedings are had that there be Judgment herein in her favor and against defendants, Parish Hospital District for the Parish of West Feliciana, West Feliciana Parish Hospital District No. 1 d/b/a St. Francis Cypress Rural Health Clinic (hereinafter "Clinic") and the Board of Commissioners of the Hospital Service District for West Feliciana Parish (hereinafter "Board"), for all sums as are reasonable under the premises, liquidated damages as allowed by law, attorney fees as allowed by law, legal interest thereon from the date of demand until paid, and all such other relief to which Petitioner is entitled at law or in equity.

.

Respectfully submitted,

By: ___s/Jill L. Craft_____
Jill L. Craft, T.A., Bar Roll No. 20922
W. Brett Conrad, Jr., Bar Roll No. 37639
Jovontee Curlee, Bar Roll No. 39530
329 St. Ferdinand Street
Baton Rouge, Louisiana 70802
Phone: (225) 663-2612
Fax: (225) 663-2613
Email: jcraft@craftlaw.net
       bconrad@craftlaw.net
       jcurlee@craftlaw.net